IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILLIAM PAUL ALEXANDER,

    Petitioner,

v.                                                                         No. 1:21-cv-0599 MV/DLM

FNU LNU, Warden, C.N.M.C.F., and
Attorney General for the State of New Mexico,

    Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Petitioner William Paul Alexander's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 7) and Respondents' Amended Answer (Doc. 82). Having considered the record and the relevant law, I find Alexander's claims lack merit and recommend **denying with prejudice** his entire petition.

**I.     Factual and Procedural Background**

Alexander is serving a term of life imprisonment plus 36 years in the custody of the New Mexico Corrections Department pursuant to a May 8, 2018 judgment entered in *State v. Alexander*, D-202-CR-2016-1875. (*See* Doc. 82-1 at 58–61.[2]) Alexander's convictions stem from the confinement and violent beating of Tiffany Boyer, resulting in her death, in August 2015. (*See id.* at 139–40.) The Court will briefly summarize the facts underlying the convictions as outlined in the New Mexico Supreme Court's Decision denying Alexander's appeal. *State v. Alexander*, No. S-1-SC-37058, 2020 WL 738421, at *1–2 (N.M. Feb. 13, 2020).

---

[1] United States District Judge Martha Vázquez entered an Order of Reference on March 28, 2023, referring this case to the undersigned magistrate judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." (Doc. 27.)

[2] The Court will cite the exhibits using the CM/ECF document and page numbers. For example, the Court will cite the State Judgment (Exhibit P) as Doc. 82-1 at 58–61. The Court greatly appreciates Respondents' concise pagination of the record. (*See* Doc. 82 at 5–7.)

According to the evidence adduced at trial, three individuals (Alexander's accomplices) drove Boyer to a house. *Id.* at *1. Alexander and his accomplices believed that Boyer had falsely accused one of their friends—an individual known as "Machete Bob"—of raping her "and that her accusation led to [the friend's] disappearance and death." *Id.* (*See also, e.g.*, Docs. 55-1 at 210, 343; 82-1 at 36.) At the house, Alexander's accomplices bound, interrogated, and beat Boyer. *Alexander*, 2020 WL 738421, at *1. Alexander later arrived at the house and "announced, 'I'm here to take care of your problem.'" *Id.* After one accomplice (Stephanie Stepp) bludgeoned Boyer with her fists and a pool cue, Alexander hit Boyer "in the head with a hammer, killing her." *Id.*

On January 18, 2018, the jury began its deliberations on seven counts: <u>Count 1</u>: willful and deliberate first-degree murder, and in the alternative, felony murder; <u>Count 2</u>: conspiracy to commit first-degree murder, and in the alternative, conspiracy to commit felony murder; <u>Count 3</u>: kidnapping; <u>Count 4</u>: conspiracy to commit kidnapping; <u>Counts 5–6</u>: tampering with evidence; and <u>Count 7</u>: conspiracy to commit tampering.[3] (*See* Doc. 54 at 2 (citing Doc. 54-1 at 58–61).) Approximately five hours after deliberations began, the jury returned with verdict forms signed as to Counts 1 and 2, but not for their alternatives. (*See* Doc. 55-1 at 1389, 1394–97.) Upon questioning by the court, the foreperson affirmed that further deliberations would be useful. (*See id.* at 1395–96.) The jury retired once more to resume deliberations and returned approximately ten minutes later with all verdict forms signed. (*See id.* at 1396–98.) The jury found Alexander guilty on all counts—including *both* alternatives for Counts 1 and 2; that is, the jury found Alexander guilty of *both* willful and deliberate first-degree murder *and* felony murder (charged in the alternative) in Count 1, and of *both* conspiracy to commit first-degree murder *and* conspiracy

---

[3] "The state district court dismissed Count 8, which charged Mr. Alexander with being a felon in possession of a firearm, on February 12, 2018." (*See* Doc. 21 at 2 n.2 (citing Doc. 21-1 at 57).)

to commit felony murder (charged in the alternative) in Count 2. (*See id.* at 1399–1400.)

Defense counsel orally moved for a mistrial on Count 1 and argued that the jury's conduct evidenced confusion. (*See id.* at 1403.) Defense counsel later filed a written motion. (*See id.* at 1403–04.) The State opposed the motion but asked the court to vacate the conviction for felony murder in the alternative to Count 1. (*See* Doc. 82-1 at 52.) The trial court sided with the State, denying the motion and vacating the felony murder conviction. (*See id.* at 55–56.) The court also vacated the convictions for conspiracy to commit felony murder (the alternative charge in Count 2), conspiracy to commit kidnapping (Count 4), conspiracy to commit tampering (Count 7), and one of the two convictions for tampering with evidence (Count 6). (*See id.* at 59–60.) Thus, Alexander's sentence reflects convictions for: Count 1: willful and deliberate first-degree murder; Count 2: conspiracy to commit first-degree murder; Count 3: kidnapping; and Count 5: tampering with evidence. (*See id.* at 60.) The court sentenced Alexander to life imprisonment followed by 36 years. (*See id.*)

### A. Direct Appeal

On May 14, 2018, Alexander filed a direct appeal to the New Mexico Supreme Court. (Doc. 82-1 at 62.) Through counsel, Alexander listed six issues in the "Statement of Issues":

Issue I: The Count 1 conviction (first-degree murder) should be set aside due to juror confusion.

Issue II: Alexander was subjected to double jeopardy because he was sentenced to both first-degree murder and to the predicate felony (kidnapping).

Issue III-A: Alexander's due process rights were violated when the jury signed verdict forms for both alternative charges in Count 1; and there was insufficient evidence to convict Alexander of first-degree murder.

Issue III-B: Alexander's due process rights were violated when he was convicted of kidnapping under an accomplice liability theory.

> Issue III-C: Alexander's due process rights were violated because there was insufficient evidence to support the tampering conviction.
>
> Issue III-D: Alexander's due process rights were violated because the facts did not support the convictions for conspiracy to commit kidnapping or conspiracy to commit murder.

(*Id.* at 81–88.) Alexander presented arguments on only three of these issues—I, II, and III-B—in his brief-in-chief. (*See id.* at 108, 111–12.)

On February 13, 2020, the New Mexico Supreme Court affirmed the judgment and sentence. (*See id.* at 138–53.)

### B. State Habeas Petitions

On December 15, 2020, Alexander filed a pro se petition for writ of habeas corpus in the state district court. (*See id.* at 155.) Alexander listed three grounds for relief:

> Ground 1: Ineffective assistance of trial counsel.
>
> Ground 2: Ineffective assistance of appellate counsel.
>
> Ground 3: Actual innocence.

(*Id.* at 155–58.)

The Law Offices of the Public Defender (LOPD) reviewed the petition and concluded that it was "unable to determine whether this is a proceeding that a person of adequate means would be willing to bring at his own expense, and advise[d] that the petition should be returned to [Alexander] for revision." (*Id.* at 185–86 (underlining omitted).) On October 17, 2022, the state district court entered an order dismissing Alexander's state habeas petition on the merits. (*See id.* at 194–208.) Although Alexander failed to timely file a petition for writ of certiorari, this Court stayed the case so that he could do so. (*See* Docs. 36 at 2–3; 42–43.) The New Mexico Supreme Court ultimately denied Alexander's request for review on July 8, 2024. (*See* Doc. 54-1 at 219.)

### C.  Alexander's § 2254 Claims

Alexander filed his Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody on June 29, 2021. (Doc. 1.) He filed an Amended Petition on July 20, 2021. (Doc. 7.) Respondents filed a limited answer on September 15, 2022, arguing that Alexander filed a mixed petition containing both exhausted and unexhausted claims. (See Doc. 21.) Following the New Mexico Supreme Court's denial of Alexander's petition, Respondents filed a Supplemental Answer and asked the Court to deny Alexander's petition in full. (Doc. 54.)

The Court found that Alexander's petition was still mixed and gave him the choice to either return to state court to exhaust the remaining claims or to voluntarily dismiss them and continue only with the exhausted claims. (*See* Docs. 60 at 9–10; 75.) Alexander chose to voluntarily dismiss the unexhausted claims, and the Court ordered Respondents to file an amended answer relevant to the remaining claims. (*See* Docs. 80–81.) The following claims are at issue in this opinion:

Ground 1: Double jeopardy and due process violations due to juror confusion on the alternative counts.

Ground 2: Double jeopardy and due process violations due to convictions for both first-degree murder and kidnapping.

Ground 3: Double jeopardy and due process violations on the basis that the state court "should have vacated [his] kidnapping conviction when it vacated [the] felony murder conviction . . . ."

Ground 4: Due process violations due to insufficient evidence to convict him on the kidnapping conviction.

Ground 6: Due process violations due to insufficient evidence to support the conspiracy to commit kidnapping conviction.

Ground 7: Ineffective assistance of trial counsel:

7(a): Due to trial counsel's failure to communicate with Alexander;

7(b): Due to trial counsel's failure to investigate alibi witnesses or Stepp's

online admission of guilt;

7(d): Due to trial counsel's failure to call defense witnesses.

Ground 8: Ineffective assistance of appellate counsel due to a failure to communicate with Alexander and a failure to include issues in the appeal brief.

Ground 10: Actual innocence claim.

(Doc. 7 at 6, 8–9, 11, 13, 15–18, 26, 31–32; *see also* Doc. 81.) Respondents filed an amended answer on June 18, 2025. (Doc. 82.) Alexander asserts in his reply that he did not kill Boyer and was forced to help dispose of her body. (*See* Doc. 85 at 2.)

## II. Legal Standard

### A. Pro Se Litigant

Because Alexander is proceeding pro se, the Court will construe his pleadings liberally and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### B. 28 U.S.C. § 2254 Standard

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, governs Alexander's petition. When a state court has adjudicated a claim on the merits, habeas relief under § 2254(d) is not available unless the state-court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2). The Court's review of the state court's decision is "highly deferential." *See Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1082 (10th Cir. 2023) (citing 28 U.S.C. § 2254(d)).

**III.    Analysis**

    **A.    Grounds 1–3: Double jeopardy and due process claims.**

In Ground 1, Alexander argues that the jury's return of guilty verdicts on both Count 1 (willful and deliberate first-degree murder) and the alternative to Count 1 (felony murder) evidence juror confusion and constitute double jeopardy and due process violations. (*See* Doc. 7 at 6–7.)

To the extent he claims a violation of his due process rights, he fails to develop his argument or to demonstrate that any alleged juror confusion was so unfair as to deprive him of a fair trial. *See, e.g.*, *Lott v. Trammell*, 705 F.3d 1167, 1190 (10th Cir. 2013) (discussing the "general due process standard that applies to criminal trials") (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). As a result, I recommend denying this claim.

Alexander's double jeopardy claim also fails. "The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment, provides that 'no person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb.'" *Branch v. New Mexico*, No. 1:17-cv-0761 MV/GBW, 2019 WL 2353576, at *5 (D.N.M. June 4, 2019), *R&R adopted*, 2019 WL 3322556 (D.N.M. July 24, 2019) (quoting U.S. Const. amend. V). In relevant part, double jeopardy may arise when a defendant is subjected to "multiple punishments for the same offense." *Alexander*, 2020 WL 738421, at *2 (quoting *State v. Torres*, 413 P.3d 467, 474 (N.M. 2018)). Alexander did not receive multiple punishments for the same offense, because the state court vacated the felony murder conviction. (*See* Doc. 82-1 at 56.) On appeal, the New Mexico Supreme Court concluded that vacating the felony murder conviction was appropriate, as it is "permissible for the jury to convict a defendant of multiple alternative charges to one count (so long as the defendant is not subject to multiple punishments)." *See Alexander*, 2020 WL 738421, at *3 (citing *State v. Galindo*, 415 P.3d 494, 502 (N.M. 2018) ("observing

7

that . . . when a jury returns 'multiple guilty verdicts based on alternative theories of the same offense,' it is proper for the district court to 'vacate the duplicative convictions' to resolve the double jeopardy concern"); *State v. Montoya*, 306 P.3d 426, 439 (N.M. 2013) ("holding that where there are two valid convictions but punishment for both would violate double jeopardy, the district court must vacate '[o]ne of the convictions'")).

Alexander also argues that the convictions for both Count 1 and its alternative should have been vacated "because the record is silent as to the specific included offense the jury agreed on and the offense on which it reached an impasse in its verdict . . . ." *See id.* (citing *State v. Phillips*, 396 P.3d 153, 157–58 (N.M. 2017)). The New Mexico Supreme Court distinguished *Phillips*, which held that "the trial court is under a nondiscretionary duty to clarify any ambiguity in the jurors' responses [on polling] and obtain a clear and unambiguous response from the jury, beginning with the highest offense included in the count." *Id.* (quoting *Phillips*, 396 P.3d at 157). Because there was no indication of ambiguity from the jury (*see* Doc. 55-1 at 1401–02), the New Mexico Supreme Court concluded that there was no evidence that the jury reached an impasse and no ambiguity in Alexander's convictions. *Alexander*, 2020 WL 738421, at *2–3. To the extent Alexander argued "the verdict was ambiguous because the jury needed extra time to reach a decision on the charge of felony murder" and then returned guilty verdicts on Count 1 and the alternative, the New Mexico Supreme Court similarly found no double jeopardy violation. *See id.* at *3. "A court may grant a jury additional time to deliberate the guilt of a defendant." *Id.* (quoting *State v. Juan*, 242 P.3d 314, 321 (N.M. 2010)). Alexander does not attempt to show that the decision on appeal was in error. (*See* Doc. 7 at 6–7.) In sum, Alexander fails to establish that the state court decision was unreasonable or contrary to federal law, and I recommend denying Ground 1 in full.

8

In Ground 2, Alexander asserts a double jeopardy violation because he was convicted of both murder and the "predicate felony." (Doc. 7 at 9.) The New Mexico Supreme Court summarized Alexander's argument as follows:

> [Alexander] asserts that the district court should have vacated his kidnapping conviction when it vacated his felony murder conviction because kidnapping was used as the predicate felony to the felony murder charge. [He] argues that because the conduct underlying a felony murder and its predicate felony is always unitary, allowing both convictions to stand is a violation of his right against double jeopardy.

*Alexander*, 2020 WL 738421, at *3. Had Alexander been sentenced "for both felony murder and kidnapping," the court explained, Alexander's "argument would be compelling." *Id.* at *4. If that had been the case, the trial "court would then have imposed multiple punishments for the same offense because kidnapping was the predicate felony for felony murder, meaning that the felony murder conviction would subsume the kidnapping conviction." *Id.* (citing *State v. Frazier*, 164 P.3d 1, 2 (N.M. 2007) ("holding that a felony murder conviction always subsumes a conviction for the underlying felony")). The trial court, however, vacated the felony murder conviction, negating any double jeopardy concerns. *See id.* As Alexander fails to show that the court's conclusion was unreasonable or contrary to law, this claim fails.

In Ground 3, Alexander argues that "because kidnapping was used as the predicate felony" for felony murder, and "the conduct underlying a felony murder and its predicate is always unitary[,]" the failure to vacate the kidnapping conviction resulted in double jeopardy and due process violations. (*See* Doc. 7 at 11.) "In determining whether a defendant's conduct constitutes a single criminal offense or separate criminal offenses for double jeopardy purposes," the New Mexico Supreme Court asks first "'whether the conduct underlying the offenses is unitary, *i.e.,* whether the same conduct violates both statutes.'" *Lucero v. Kerby*, 133 F.3d 1299, 1316 (10th

Cir. 1998) (quoting *Swafford v. New Mexico*, 810 P.2d 1223, 1233 (N.M. 1991)). "If the conduct is non-unitary, then multiple punishments would not violate the Double Jeopardy Clause." *Id.* (citing *Swafford*, 810 P.2d at 1233).

Here, the New Mexico Supreme Court opined that Alexander failed to show a double jeopardy violation because "a reasonable jury could find, and evidence reinforces the conclusion, that [Alexander's] conduct supporting the conviction for kidnapping and his conduct supporting the conviction for murder were not unitary." *Alexander*, 2020 WL 738421, at *4 (quoting *Torres*, 413 P.3d at 474). Alexander mounts no argument to show this finding was in error, nor could he: "[a] conviction for willful and deliberate murder requires 'the killing of one human being by another without lawful justification or excuse . . . by any kind of willful, deliberate and premeditated killing,'" *id.* (quoting N.M. Stat. Ann. § 30-2-1(A)(1) (1994)), while "a conviction for kidnapping requires 'the unlawful taking, restraining, transporting or confining of a person, by force, intimidation or deception, with intent . . . to inflict death, physical injury or a sexual offense on the victim,'" *id.* (quoting N.M. Stat. Ann. § 30-4-1(A)(4) (2003)). The murder conviction did not require the State to show that the victim was "taken, restrained, transported, or confined;" and the kidnapping conviction did "not require the death of the victim." *See id.* (citing N.M. Stat. Ann. §§ 30-2-1(A)(1), 30-4-1(A)(4)). In other words, the same conduct does not violate both statutes. Alexander fails to show that the New Mexico Supreme Court's determination was unreasonable or contrary to law, and thus I recommend denying the claim.

**B.  Grounds 4 and 6: Due process claims re: kidnapping-related convictions.**

Alexander contends there was insufficient evidence to support the kidnapping and conspiracy to commit kidnapping convictions, resulting in due process violations. (*See* Doc. 7 at 13, 15.) "A sufficiency-of-the-evidence challenge in a habeas petition presents a mixed question

of fact and law." *Hooks v. Workman*, 689 F.3d 1148, 1165 (10th Cir. 2012) (citing *Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008)). The Court must "ask whether the facts are correct and whether the law was properly applied to the facts," and thus "'appl[ies] both 28 U.S.C. § 2254(d)(1) and (d)(2) when reviewing sufficiency of the evidence on habeas.'" *Id.* (quoting *Brown*, 515 F.3d at 1089).

The Court's analysis is governed by the Supreme Court's opinion in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Meek v. Martin*, 74 F.4th 1223, 1252 (10th Cir. 2023). Under *Jackson*, the Court views the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 319). This standard "takes a highly deferential approach to the jury's verdict" and recognizes the jury's responsibility "fairly to resolve conflicts in . . . testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *See Meek*, 74 F.4th at 1252 (quotation marks and citations omitted). "Where the record might support 'conflicting inferences,' [the Court] presume[s] . . . [the] jury[] 'resolved any such conflicts in favor of the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 326) (citing *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) ("The Court may not weigh conflicting evidence nor consider the credibility of witnesses.")). The Court is not to decide "whether the jury's determination of guilt was 'correct[,]'" but "whether it was 'rational.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)) (citing *Messer*, 74 F.3d at 1013) ("[T]he Court must 'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'").

"Where a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA 'adds an additional degree of deference,' and the" Court must determine whether the state court's "conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson*

11

standard." *Hooks*, 689 F.3d at 1166 (quoting *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007)) (subsequent citation omitted). The Court must "view the [New Mexico Supreme Court's] assessment of the jury's verdict through AEDPA's deferential prism." *Meek*, 74 F.4th at 1252 (citing *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). "[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *See id.* "The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)) (citing *Coleman*, 566 U.S. at 651).

In Ground 4, Alexander argues that there was insufficient evidence of intent to convict him of kidnapping. (*See* Doc. 7 at 13.) In relevant part, the jury instruction provided that to find Alexander guilty of kidnapping Boyer, the State must prove:

> 1. [Alexander] restrained or confined Tiffany Boyer by force or intimidation . . . ;
> 2. [Alexander] intended to inflict death or physical injury on Tiffany Boyer
> OR
> To make [her] talk about the disappearance of [Machete Bob] . . . ;
> 3. The restraint or confinement of Tiffany Boyer was not slight, inconsequential, or merely incidental to the commission of another crime;
> 4. [Alexander] did not voluntarily free Tiffany Boyer in a safe place;
> OR
> [He] inflicted physical injury upon Tiffany Boyer during the course of the kidnapping . . . .

(Doc. 82-1 at 36.) Critically, the trial court also instructed the jury "that it could find [Alexander] guilty under a theory of accessory liability . . . ." *See Alexander*, 2020 WL 738421, at *5.

> [Alexander] may be found guilty of a crime even though [he] did not do the acts constituting the crime, if the state proves to your satisfaction beyond a reasonable doubt each of the following elements:
> 1. [Alexander] intended that another person commit the crime;
> 2. Another person committed the crime;
> 3. [Alexander] helped, encouraged, or caused the crime to be committed.

*See id.* (*See also* Doc. 82-1 at 26.)

The New Mexico Supreme Court opined that Alexander's "culpability does not turn on whether he knew the exact details of the plan in advance or was physically present[,]" as "'[i]ntent can be inferred from behavior which encourages the act or which informs the confederates that the person approves of the crime after the crime has been committed.'" *Alexander*, 2020 WL 738421, at *5 (quoting *State v. Carrasco*, 946 P.2d 1075, 1079 (N.M. 1997)). The court discussed evidence that Alexander's accomplices locked Boyer in a closet while waiting for him to arrive. *See id.* Testimony established that when Alexander arrived, he stated he was there "to take care of your problem," and he showed Stepp a text "message that read, 'I love you. You can do this.' to encourage her to continue the attacks" on Boyer. *See id.* Given Alexander's "statements and his behavior upon arriving at the house," the New Mexico Supreme Court held that "[t]he State presented sufficient evidence for a reasonable jury to find [Alexander] guilty of kidnapping under an accomplice theory of liability." *See id.* The court concluded that a reasonable "jury was entitled to infer that [Alexander] intended the kidnapping to occur or approved of the kidnapping." *See id.*; *see also* UJI 14-2822 NMRA (jury instruction for accessory liability); N.M. Stat. Ann. § 30-1-13 ("describing a defendant's liability for conviction as an accessory"). I find this determination was objectively reasonable. *See Meek*, 74 F.4th at 1252.

In sum, I find that "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found" that the State proved Alexander's guilt "beyond a reasonable doubt." *See Meek*, 74 F.4th at 1252 (quoting *Jackson*, 443 U.S. at 319). I further find that the New Mexico Supreme Court reasonably applied the *Jackson* standard. *See id.* at 1261. Alexander fails to show otherwise. Accordingly, I recommend denying Alexander's petition on this issue.

The petition fails with respect to Ground 6 for a different reason. In this claim, Alexander argues that there was insufficient evidence to convict him of conspiracy to commit kidnapping. (*See* Doc. 7 at 15.) As Respondents point out, however, the trial court vacated the conviction for conspiracy to commit first-degree kidnapping. (*See* Doc. 82 at 15 (citing Doc. 82-1 at 59–60).) Consequently, Alexander fails to establish any violation of his rights, and I recommend denying the petition on this issue.

### C. Grounds 7 and 8: Ineffective assistance of counsel claims.

Alexander contends that his trial and appellate counsel were ineffective. (*See* Doc. 7 at 16–17, 26.) To succeed on an ineffective assistance of counsel claim, Alexander must show by a preponderance of the evidence that: (1) his "counsel's representation fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984). Courts may address the two prongs "in any order, and failure to satisfy either is dispositive." *Hooks*, 689 F.3d at 1186 (citation omitted). To demonstrate that an attorney's "deficient performance prejudiced the defense[,]" the movant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**1. Failure to adequately communicate**: Alexander alleges that his trial counsel was inadequate because she only visited him in jail twice in the two years that he was awaiting trial. (*See* Doc. 7 at 16.) The state habeas court considered this allegation and found that Alexander's bare assertion was too vague or speculative to establish ineffective assistance. (*See* Doc. 82-1 at 195–96 (citations omitted).) Specifically, the court noted that the "[b]revity of

14

consultation time with the client does not establish a claim for ineffective assistance of counsel unless a defendant can show what benefit would have resulted from more consultation time." (*See id.* at 196 (quoting *United States v. Bernard*, 762 F.3d 467, 478 (5th Cir. 2014)).) Alexander fails to argue that the state court's finding was unreasonable or contrary to law. (*See* Doc. 7 at 16.) He cites several rules of professional responsibility to establish that an attorney must zealously advocate for their client (*see id.* (citations omitted)), but he fails to demonstrate that any failure to visit him more frequently prejudiced his defense. *See, e.g.*, *United States v. Savala Ramirez*, 127 F. App'x 414, 416 (10th Cir. 2005). I recommend denying the petition on this issue.

        **2.**    **Failure to investigate**: Alexander asserts trial counsel was inadequate for failing to investigate either his alibi witnesses or a Facebook post that Stepp allegedly published in which she admitted killing Boyer. (*See* Doc. 7 at 16–17.) Regarding the alibi witnesses, Alexander states that his trial counsel talked to one of the witnesses and told Alexander that they could not testify because they were "high on drugs." (*See id.* at 16.) Alexander believes this conclusion is proof that his attorney was ineffective. (*See id.*) The state court found, though, that Alexander's self-serving statements about the alibi witnesses, unsupported by facts to corroborate his alibi, were insufficient to establish prejudice under *Strickland*. (*See id.* at 205 (citing *State v. Favela*, 343 P.3d 178, 185 (N.M. 2015)).) I agree that Alexander fails to establish that his attorney's decision not to investigate the alibi witnesses further prejudiced his defense or that doing so would have changed the outcome of his trial. *See Strickland*, 466 U.S. at 694. I recommend denying the petition on this issue.

With respect to the alleged Facebook post, the state habeas court found that Alexander did not demonstrate "how exactly counsel's failing to cross examine [Stepp] on the admission unfairly prejudiced him." (*See* Doc. 82-1 at 202.) The court identified other inconsistencies the jury

15

considered, including Stepp's trial testimony that "she 'lied consistently throughout this case'" and" that "all of her statements to [law enforcement] 'were probably all lies.'" (*See id.* (citations omitted).) Additionally, another witness testified that he previously told investigators that it was Stepp who killed Boyer with a hammer, but he later retracted the statement and identified Alexander as the person who wielded the hammer. (*See id.* (citations omitted).) In light of this other inconsistent evidence, the state habeas court concluded that "the lack of a cross examination of Stepp on the alleged Facebook admission does not suggest unfair prejudice." (*See id.* at 203 (citing *State v. Hightower*, No. 29,447, 2011 WL 2041838, at *7 (N.M. Ct. App. Mar. 10, 2011) ("concluding no prejudice established a prima facie case of ineffective assistance of counsel, although counsel failed to impeach [defendant's] victim with an unsworn prior inconsistent statement, as counsel impeached the victim with other questions and inconsistencies")).) Alexander neither argues that the state court's ruling was unreasonable or contrary to law, nor does he show that his trial counsel's failure to investigate Stepp's alleged admission prejudiced his defense. (*See* Doc. 7 at 16–17.) Thus, I recommend denying his petition on this issue.

        **3.**    **Failure to call defense witnesses**: Alexander asserts ineffective assistance on the basis that his trial counsel did not call his alibi witnesses or Detective Koppman. (*See* Doc. 7 at 17.) I recommend denying the petition on the issue of failing to call alibi witnesses for the reasons outlined in the preceding section.

Alexander asserts that Detective Koppman coached two of his accomplices, and his attorney's failure to call Koppman as a witness "denied [Alexander] his most important defense." (*See id.*) Yet the state habeas court found that Alexander's attorney addressed Koppman's alleged coaching of the accomplices at trial through other witnesses. (*See* Doc. 82-1 at 197.) For example, Stepp testified that "she gave coached statements after Koppman spoke to her" and "indicated

Koppman told her that if her version of events did not coincide with [another accomplice's] version she would be charged in connection with Boyer's murder." (*Id.* (citations omitted).) Counsel referred to this testimony during closing. (*See id.* (citations omitted).)

The state court found that the decision not to call "Koppman appears as plausible trial strategy." (*See id.* at 199.) Because "a claim does not show deficient performance if under the circumstances a plausible, rational strategy or tactic explains the performance[,]" and because Alexander failed to show that the decision not to call Koppman prejudiced his case, the state court denied this claim. (*See id.* at 194–95, 197 (citing *Lytle v. Jordan*, 22 P.3d 666, 673 (N.M. 2001)).) *See also Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (noting that the defendant has the burden to show "that counsel's action or inaction was not based on a valid strategic choice") (citations omitted). Alexander does not demonstrate that this ruling was unreasonable or contrary to law, and I therefore recommend denying the petition on this issue.

      **4.**      **Failure to communicate**: Alexander asserts that his appellate counsel was ineffective because she "declined to take [his] phone calls or" to see him. (*See* Doc. 7 at 26.) As the state habeas court noted, however, "[t]his assertion fails to show deficient performance or unfair prejudice, particularly as [Alexander] apparently does not allege counsel never communicated at all with him, presumably by mail." (*See* Doc. 82-1 at 204 (citing *Bernard*, 762 F.3d at 478).) Alexander offers no argument to demonstrate that the state court's finding was unreasonable or contrary to law, and I recommend denying the petition on this issue.

      **5.**      **Failure to raise ineffective counsel argument on appeal**: Alexander contends his appellate counsel was ineffective because she did not include his complaints about ineffective assistance of trial counsel in the appellate brief. (*See* Doc. 7 at 26.) The state habeas court easily dismissed this argument: "Alexander's bare assertion . . . hardly shows appellate

17

counsel performed deficiently, nor that Alexander was prejudiced. In light of Alexander's assertions about trial counsel ineffectiveness lacking merit . . . , [he] hardly shows appellate counsel was ineffective for not raising trial ineffectiveness on appeal." (Doc. 82-1 at 204 (citing *State v. Sanchez*, 652 P.2d 1232, 1234 (N.M. Ct. App. 1984) (noting that the "[f]ailure to file a non-meritorious motion cannot be declared ineffective assistance")) (subsequent citation omitted).) I agree. *See Neill v. Gibson*, 278 F.3d 1044, 1057 (10th Cir. 2001) ("When considering a claim of ineffective assistance of appellate counsel for failure to raise an issue, we look to the merits of the omitted issue.") (quoting *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999)). Alexander fails to show that the court's finding was unreasonable or contrary to law. I recommend denying Alexander's ineffective assistance claims in full.

D.     **Ground 10: Actual innocence.**

Alexander asserts an actual innocence claim and argues: (1) there was no direct evidence offered against him; (2) the testimony from two accomplices establishes that Stepp was responsible for Boyer's murder; and (3) the forensic anthropologist's testimony does not support a finding that Boyer was killed with a hammer. (*See* Doc. 7 at 31–32 (citations omitted).) As Respondents point out (*see* Doc. 82 at 20), courts distinguish "between claims of actual innocence used as a gateway and as a freestanding basis for habeas relief." *See Farrar v. Raemisch*, 924 F.3d 1126, 1130 (10th Cir. 2019). Alexander does not need to overcome a procedural bar; rather, he asserts a freestanding claim. (*See* Doc. 82 at 20.) Yet the United States Supreme "Court has never recognized freestanding actual innocence claims as a basis for federal habeas relief." *Farrar*, 924 F.3d at 1131. "To the contrary, the Court has repeatedly rejected such claims, noting instead that '[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying

18

state criminal proceedings.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Consequently, the Tenth Circuit has "held that actual innocence does not constitute a freestanding basis for habeas relief." *Id.* (gathering cases). This authority alone constitutes sufficient reason to deny Alexander's petition on this final issue.

Further, the state court considered Alexander's actual innocence claim and wholly rejected it. (*See* Doc. 82-1 at 205–08.) The court examined Alexander's contentions regarding his alibi witnesses and found that he failed to identify facts to corroborate "his bare assertion [that the alibi witnesses] would exculpate him." (*Id.* at 205 (citing *Favela*, 343 P.3d at 185).) Moreover, the court stated, Alexander's version of events in support of his alibi do not clearly preclude the possibility of his involvement given the timeline of the crimes against Boyer. (*See id.* at 205–06.) The court also found that Alexander's position regarding the testimony of his accomplices and the forensic anthropologist simply amounted to a dispute about the weight of the evidence and therefore rejected the argument. (*See id.* at 206–08.) Alexander fails to show that the court's conclusion was unreasonable or contrary to law. *See, e.g.*, *Torres v. Santistevan*, No. 2:19-cv-0209 JB/JHR, 2019 WL 6522750, at *8 (D.N.M. Dec. 4, 2019), *R&R adopted*, 2020 WL 901627 (D.N.M. Feb. 25, 2020) (in analyzing a sufficiency of the evidence claim, "[t]he reviewing court cannot . . . 'reassess the jury's conclusions about the weight of the evidence presented'") (quoting *United States v. Johnson*, 57 F.3d 968, 971 (10th Cir. 1995)).

Finally, although it does not appear that the state habeas court specifically considered Alexander's argument that there was no direct evidence against him, he fails to cite authority to support an actual innocence claim on this basis. Indeed, "substantial circumstantial evidence is sufficient to support a conviction." *Ramirez v. Cent. N.M. Corr. Fac.*, No. 1:21-CV-979 KWR/KRS, 2023 WL 7180468, at *9 (D.N.M. Nov. 1, 2023), *R&R adopted sub nom.*, 2023 WL

19

8096885 (D.N.M. Nov. 21, 2023), *appeal dismissed sub nom.*, No. 23-2195, 2024 WL 3042162 (10th Cir. Feb. 22, 2024) (citing *State v. Montoya*, 345 P.3d 1056 (N.M. 2015)). The circumstantial evidence supporting Alexander's convictions included, for example, testimony from multiple witnesses present during the kidnapping, beating, and murder of Boyer; videotape evidence placing Alexander at a gas station near the remote area where Boyer's body was disposed of; and text messages referencing Alexander's involvement in the crimes. (*See, e.g.*, Doc. 55-1 at 233–51, 286, 291, 973, 1010–12, 1015, 1018–19, 1041–47, 1074–76, 1319–25.) Alexander fails to establish a plausible actual innocence claim on this basis, and I recommend denying the petition with respect to Ground 10.

**IT IS HEREBY RECOMMENDED** that the Court **deny with prejudice** the entire Amended Petition. (Doc. 7.)

---

**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE